[Civil No. 824.  Filed March 26, 1904.]

[76 Pac. 617.]

THE VALLEY BANK, Plaintiff, v. ALEXANDER O. BRODIE et al., as the Loan Commissioners of the Territory of Arizona, Defendants.

1. WARRANTS—FUNDING—LOAN COMMISSIONERS—MANDAMUS—ACT CONGRESS JUNE 25, 1890, c. 614, 26 STATS. 175, CITED AND CONSTRUED.—*Mandamus* will not lie to compel the funding by the loan commission of certain city warrants under the acts, *supra*, where the petition alleges that the plaintiff is the assignee of such warrants, but it appears from the proofs that said warrants are payable to certain persons, and not to their order; that some were indorsed in blank and some unindorsed; that the original holders had not parted with their interest or received any valuable consideration therefor, even were such warrants properly fundable on presentation and demand by the owners or real parties in interest.

2. SAME—SIGNATURE—MAYOR—AUDITOR—VALIDITY—LAWS ARIZ. 1881, ACT No. 39, P. 37 (TOMBSTONE CITY CHARTER), AND LAWS 1885, ACT No. 109, P. 315, CONSTRUED.—Section 5 of article 2 of act 39, *supra*, gave the city council power to create certain offices and appoint officers therefor. Section 2 of article 9 gave the council power to fix the salaries for such officers. Section 17 of article 10 provides that all demands against the city shall be presented to the council, which shall audit the same, and if allowed they shall order the same to be paid, and shall require the auditor to draw a warrant upon the city treasurer in favor of the holder of said claim, and such warrant shall be signed by the mayor and countersigned by the auditor. Act No. 109, *supra*, amendatory to act No. 39, *supra*, while it created certain city offices, fixed the salaries thereof, made such salaries a just and legal claim against the city, and required the auditor to draw warrants on the salary fund for each office on the first day of each month, did not except warrants for salaries from the requirement of the charter that all warrants should be signed by the mayor and countersigned by the auditor.

IX Ariz.—2

3. SAME—RES JUDICATA.—Where salaried officers of a city have brought *mandamus* to compel the mayor to sign warrants for their salaries and the writ has been denied, such judgment is *res judicata* as to the question of the duty of the city to issue such warrants. But if the city, notwithstanding such adjudication, has issued such warrants, the duty of the loan commissioners to fund such warrants is the sole question in *mandamus* to compel the funding.

4. SAME—VALIDITY—SIGNATURES NECESSARY.—Warrants, to have a binding effect upon a municipal corporation, must be signed by the mayor, where his signature has been made a necessity by the charter of such corporation to every warrant or evidence of indebtedness against the same.

5. SAME—NON-PAYMENT—INTEREST.—Where a city charter provided that warrants of a city should be drawn on the city treasury, presentation of warrants to one J. and their non-payment for want of funds at a time when he had none of the city funds in his possession or control, and no access to such funds without a presentation to the acting and qualified treasurer, who had such funds, from which, if at all, they could have and should have been paid, was not such presentation as would cause them to bear interest thereafter, irrespective of whether the one to whom presentation was made had any claim to the office of treasurer.

ORIGINAL PETITION for Writ of Mandamus.

The facts are stated in the opinion.

Street and Alexander, for Plaintiff.

One objection to the funding of these warrants raised by the answer of the city of Tombstone is that the warrants were not signed by the mayor. A plain answer to that is, that the law authorized the issuing of the city warrants for salaries by the auditor alone, and the signature of the mayor to such warrants was not essential to give salary warrants validity. The section in that particular is as follows: Section 2 of act 109 of the thirteenth legislative assembly, approved March 13, 1885, provides: "The auditor of said city of Tombstone is hereby authorized and directed to draw warrants on the salary fund for each office in said act mentioned and for the amount specified in said act. Said warrants to be drawn on the first day of each month."

These warrants were issued in the only manner prescribed by law and signed by the only parties authorized to sign them. Howsoever many names of officers might have been added to

the warrants none of them could have added anything to the validity of their execution unless the statute had so required. We have cited all the statute law there is on the subject.

Charles Bowman, and H. L. Pickett, for Defendants.

DOAN, J.—This is an original proceeding brought in this court by the plaintiff for a peremptory writ of *mandamus* against the loan commissioners of the territory to compel them to fund, under the provisions of the act of Congress of June 25, 1890, (c. 614, 26 Stats. 175,) and the amendments thereto, and the acts of the territorial legislature based upon said act, certain indebtedness of the city of Tombstone, evidenced by certain warrants held by it as assignee of the original holders thereof.

In substance, the complaint sets out that during the years 1891, 1892, and 1893 various warrants were drawn by the auditor of the city of Tombstone upon the city treasurer for the payment from the salary fund of salaries due various officers of that city; that all of the said warrants were duly presented to the city treasurer, and by that officer indorsed, "Presented and not paid for want of funds"; that all of said warrants have been duly assigned to the plaintiff, who is now the owner and holder thereof; that none of said warrants have been paid, and the same are now evidences of valid and legal indebtedness of the said city, and are fundable under the provisions of the various funding acts of Congress and of the territory; that by said acts it is made the duty of the loan commissioners to provide for the redeeming and refunding of said city indebtedness and to issue bonds for said indebtedness in exchange for said warrants and interest; that on the seventeenth day of November, 1902, the plaintiff made demand on the defendants that they, as the loan commissioners of the territory of Arizona, issue bonds, as provided by law, in exchange for said warrants and interest as aforesaid; that the defendants have failed hitherto to comply with said request and demand, and have refused and now refuse so to do; plaintiff therefore prays the issuance out of this court of a writ of *mandamus* directing and requiring the defendants as the loan commissioners of the territory of Arizona to issue bonds for said indebtedness in exchange for said outstanding obligations.

To this the loan commissioners answered that on the seventeenth day of November, 1902, a petition was filed with the said commission by the plaintiff, praying for the refunding of one hundred and thirty-two city warrants of the city of Tombstone, Arizona, alleged to have been issued by the said city of Tombstone to George Bravin, A. B. Staniger, W. C. Staehle, and R. E. Jackson for salaries as city officers, and offered, upon the funding of such warrants into territorial bonds, to surrender the same in exchange for such bonds; that on the twenty-sixth day of November, 1902, the city of Tombstone, Arizona, filed with the loan commission its answer to the said petition, demurring to the jurisdiction of the said commission to try the question of the validity of the alleged city warrants; denying that the petition stated facts sufficient to authorize the said commission to fund the alleged warrants; alleging that the cause of action had been barred by the statute of limitations of Arizona; denying that the said George Bravin, A. B. Staniger, W. C. Staehle, and R. E. Jackson, or any or either of them, held the offices for which it was alleged in said petition that said warrants were issued, or any office in said city of Tombstone, at any time after April 1, 1891; averring that the alleged city warrants were never assigned, sold, or transferred to the petitioner, the Valley Bank, and that said petitioner had no interest whatever therein; averring that the several alleged city warrants were never signed nor issued by the auditor or acting auditor of said city of Tombstone, and that none of said warrants were ever indorsed on the back thereof "Presented and not paid for want of funds" by any treasurer or acting treasurer of the said city of Tombstone; alleging that on the thirteenth day of December, 1902, the loan commissioners of the territory of Arizona, after a full hearing of the petition and the evidence offered by the city of Tombstone in support of its said answer, refused to grant the petition of the plaintiff, and denied its application to refund said city warrants, because of the legal questions as to the validity of the said warrants thus presented, and notified the parties that such refunding was declined.

The loan commission further represented to the court that the city of Tombstone be made a party defendant to this action, for the reason that questions as to matters of fact essential to the final determination of this matter, and affecting the

substantial rights of the plaintiff and the said city of Tombstone, were raised by the petition and answers in the case, and asked that said city of Tombstone have its day in court in order that such facts may be ascertained.

Thereafter, on the nineteenth day of January, 1903, by stipulation of the several parties, it was ordered that the city of Tombstone be made a party defendant in this action, and the cause referred to a referee to take evidence on the questions of fact and report to this court. The city of Tombstone thereafter filed an answer, and alleged by way of plea in bar to plaintiff's cause of action that the several causes of action, and each of them, stated in plaintiff's complaint, accrued more than four years prior to the commencement of this action; wherefore defendant says the several causes of action are, and each of them is, barred by the provisions of paragraphs 2954 and 2956 of the Revised Statutes of Arizona, of 1901; and, further answering, denies that said warrants were, or any of them was, duly issued and signed by the mayor or city auditor, or any other officer, of the city of Tombstone; denies that said warrants are, or any of them is, an outstanding obligation of the city of Tombstone, or were such on or before the first day of January, 1897; denies that said purported warrants, or any of them, have been assigned to plaintiff for value; denies that plaintiff is the owner and holder thereof for value; alleges that during the year 1890, and until April 6, 1891, the said A. B. Staniger was the city auditor of the city of Tombstone; that from that date the said Staniger ceased to be the city auditor of the city of Tombstone, and for all time since, and now, the duties of the office of city auditor have been performed by other persons; that the said Staniger, from said April 6, 1891, has not acted as city auditor, nor attempted to act in that capacity, nor has he ever discharged any of the duties of that office, nor attempted so to do, nor had in his possession any of the books or papers of that office, nor made any claim to act as such officer; that during the year 1890, and until April 15, 1891, the said R. E. Jackson was the city treasurer of the city of Tombstone, and that the said Jackson, from said fifteenth day of April, 1891, has not acted as city treasurer, nor attempted to act in that capacity, nor has he ever discharged any of the duties of that office, nor attempted to do so, nor had in his possession any of the books, moneys, papers, or insignia

of said office, nor made any claim to act as such officer, but for all time since the said fifteenth day of April, 1891, and now, the duties of the office of city treasurer have been performed by other persons. Defendant further alleges that none of the purported warrants were issued or signed by the mayor and countersigned by the auditor, or issued or signed by any officer of the city of Tombstone authorized to sign the same, but defendant alleges that all of said purported warrants were made out in the handwriting of W. C. Staehle, and signed by A. B. Staniger some time during the year 1894, long after the time which they each respectively bear date and purport to have been signed, and at a time when neither the said Staniger nor Jackson was holding, occupying, or enjoying, or attempting to hold, occupy, or enjoy any office of the city of Tombstone, or to discharge any of the duties of any office of the city of Tombstone, and that none of the said purported warrants set out in plaintiff's complaint bear the signature of the mayor of said city, as required by law; and defendant alleges that said purported warrants and each and all thereof, are spurious and fraudulent, and not the genuine city warrants of the city of Tombstone, and constitute no legal evidence of indebtedness against said city. Defendant alleges that on or about the twenty-fifth day of April, 1893, the said Bravin, Staniger, Staehle, and Jackson brought their several actions in the district court of Cochise County against the mayor and common council of the city of Tombstone, which several actions were entitled and numbered as follows: George Bravin against the Mayor and Common Council of the City of Tombstone, No. 1718; A. B. Staniger against the same, No. 1721, W. C. Staehle against the same, No. 1722; R. E. Jackson against the same, No. 1723; that in each of said actions plaintiff asked the court for a mandate commanding the said defendants to issue to them severally city warrants for salaries; that each of said actions was tried by the said district court, and judgment was made and entered in each of said actions for and in favor of the city of Tombstone, which judgments have each long since become final, and have never been reversed or set aside, and they are now each in full force and effect, and defendant therefore pleads those several actions, and the judgments rendered therein, as estoppels against the right of the said Bravin, Staniger, Staehle, and Jackson, or their assigns, to maintain this action.

The application to fund was made by the plaintiff, claiming to be the owner and holder of the warrants, the same having been assigned to it by the original holders. This assignment and ownership was denied in the verified answer of the defendant the city of Tombstone, and the evidence presented in the record not only fails to establish such assignment and ownership, but establishes the contrary. The warrants introduced in evidence do not show an assignment by indorsement to plaintiff. They are drawn restrictively to the several persons named, and are not made payable to their order. Some have the name of the payee written in blank upon the back, and some have no indorsement by payee whatever. The original holders of the warrants, as witnesses for the plaintiff, testified that they have not parted with their interest in the same, or received any value for a transfer of such interest. That leaves the plaintiff without any right to demand the funding of said warrants. There is imposed on the loan commission no duty to this plaintiff to fund the warrants, even if the same were properly fundable on presentation and demand by the owner or real party in interest.

The warrants are presented as evidence of municipal indebtedness. Act No. 39, (Laws 1881, p. 37), which for brevity is herein referred to as "the charter" of the city of Tombstone, only authorized the incurring of indebtedness in a certain manner, and provided for the creation of certain offices and the appointment of officers to fill such offices, fixed the amount of the salaries and compensation of such officers, and provided for the payment of such amounts and of all other indebtedness of the city, as follows:—

Section 5 of article 2 (p. 41) provides that "The mayor and common council shall have the further power, by ordinance, to create the offices of city attorney, . . . city assessor, . . . city treasurer, . . . and such other offices as they deem proper, and shall appoint officers for such offices, whose duties, powers and terms of office shall be prescribed by the common council."

Section 2 of article 9 (p. 70) provides that "The salaries and compensation of the city attorney, . . . city treasurer, . . . assessor, . . . and all other officers appointed by the mayor and common council shall be fixed by said common council at such sums or amounts as they may deem just and equitable."

Section 1 of article 10 (p. 71) provides that "The city of Tombstone shall not be, and is not bound by any contract, or in any way liable thereon, unless the same is made in writing by order of the common council, the draft thereof be approved by the common council and the same ordered to be and be signed by the mayor, or some other person, in behalf of the city."

Section 17 of article 10 (p. 74) provides that "All claims and demands against said corporation shall . . . be presented to the council, and shall be by them referred to a committee on finance, . . . who shall examine, audit, or allow or reject the same in whole or in part, subject to the approval of the common council. . . . The common council shall thereupon proceed to consider the report of the committee, and the claims or demands presented, and shall, if the same be just and legal, order the same to be paid, and shall require the auditor to draw a warrant upon the city treasury in favor of the holder of such claim, or demand for the amount allowed; such warrant shall be signed by the mayor and countersigned by the auditor."

Section 18 of the same article further (p. 74) provides that "No suit shall be brought upon any claim for money or damages against said corporation until such claim or demand has been presented as aforesaid and rejected by the common council, whole or in part; if rejected in part, suit may be brought to recover the whole. Nor shall suit be brought against said corporation upon any such claim or demand if the common council shall allow the whole of such claim or demand, and shall order the same to be paid as hereinbefore required; provided, that nothing herein contained shall be construed as to deprive the holder of any claim or demand of his right to resort to a suit of mandate or other proceeding against the said common council, or any officer of said city, to compel them or him to act upon said claim or demand, to draw or sign such warrants, or pay the same when so drawn."

Under the provisions of this law the salaries for the officers in question were fixed by the common council and paid by warrants drawn by the auditor upon the city treasury, which warrants were signed by the mayor and countersigned by the auditor.

But act No. 109 (Laws 1885, p. 315), amended section 5 of article 2 of the charter to read as follows:—

"Section 1. The officers of the city of Tombstone shall be the mayor and common council, . . . one treasurer, who shall receive the monthly salary of fifty dollars per month; one city attorney who shall receive the monthly salary of fifty dollars per month, . . . one auditor, who . . . shall receive . . . the monthly salary of ninety dollars; one assessor, who . . . shall receive a monthly salary of ninety dollars. . . .

"Sec. 2. The auditor of the said city of Tombstone is hereby authorized and directed to draw warrants on the salary fund for each office in said act mentioned, and for the amount specified in said act, said warrants to be drawn on the first day of each month.

"Sec. 3. All warrants drawn by the auditor for salaries as provided for by this act, shall be drawn on said salary fund, and if at any time the amount of money in said fund is insufficient to pay the warrants so drawn upon demand, the mayor and common council of said city are hereby authorized and directed to transfer from the general fund of said city to said salary fund so much money as may be necessary to pay said warrants."

This act, while declared to be an amendment of section 5 of article 2 of the charter, also (in effect) amends section 17 of article 10 thereof by excepting the monthly salaries of the officers therein mentioned from the claims and demands dependent upon the approval of the finance committee of the common council, and by constituting the same just and legal demands against the city, for which, instead of the common council requiring the auditor to draw warrants upon the city treasury in favor of the holder of such claim for the amount allowed as provided by said section 17, the auditor is authorized and directed by this act to draw warrants on the salary fund for each office on the first day of each month. The extent and effect of this amendment is to fix definitely the compensation of the several officers, and to make such amounts a just and legal monthly claim against the city, and to authorize the auditor to draw a warrant for the same without any further authority or requisition from the common council. But there is no further change of procedure required by the amendment, and nothing in it to except the warrants from the

requirement made of all warrants that they be signed by the mayor and countersigned by the auditor. A refusal of the mayor to sign, or the auditor to draw or countersign, such warrants, would entitle the claimant to his relief by mandate under the provisions of section 18 above cited. This relief the original holders of the warrants, the alleged assignors thereof to the plaintiff herein, sought by proper action in the district court in the actions above referred to, in each of which the judgment of the district court was rendered against them severally and in favor of the city of Tombstone. These judgments, having never been vacated, set aside, nor appealed from, remain in full force and effect, and preclude the parties thereto and their successors in interest from any further action for the subject-matter involved therein. The matter adjudicated in that suit was the right of the parties to receive warrants, such as the ones purporting to be herein presented, for their services, and the duty of the city of Tombstone or its officers to issue to them such warrants. This was definitely determined against the applicants and in favor of the city. The judgments in these cases have rendered *res judicata* the question of any duty resting on the city of Tombstone to issue to these parties warrants such as those presented herein purport to be. The present action, however, is an action brought upon what purport to be such warrants that are alleged to have been issued thereafter by officers of the city authorized to bind the city by their action. If, notwithstanding the adjudication of its duty in the premises, the city has since that time issued such warrants, and the warrants in question are genuine, *bona fide* warrants of the city of Tombstone—outstanding obligations evidencing a municipal indebtedness—the duty of the loan commissioners to fund such warrants is the sole question to be determined in this action.

The warrants in question show by their form that the signature of the mayor was contemplated, the warrants being drawn with a blank space for the name, and the word "Mayor" printed thereunder. They appear from the evidence to have been executed, so far as they have been executed, by the parties interested, after such parties were no longer discharging the duties of the offices to which they claim title, and when they were not in possession of the supplies or funds of the city. The warrants were all drawn and

countersigned by A. B. Staniger, one of the interested parties, as city auditor, upon R. E. Jackson, another interested party, as treasurer, and not signed by the mayor, the mayor's signature being left blank on each warrant in question. As such they are imperfect, and do not constitute any evidence of indebtedness against the corporation. The obligations of a corporation, to bind the corporation, must be executed by the proper officers as provided in the charter of such corporation, and, even if we should concede Staniger's authority as auditor to draw the warrants, we consider that the warrants, to have a binding effect upon the municipal corporation, must be signed by the mayor, whose signature has been made a necessity by the charter of such corporation to every warrant or evidence of indebtedness against the same.

It is stated in the petition that the amount of the principal alleged to be due upon said warrants is $9,242, and the amount of the interest due thereon is $6,560. The demand for the interest is based upon the allegation that the first of said warrants was dated May 1, 1891, and the last was dated January 1, 1894, and that all of said warrants were presented to the city treasurer of the city of Tombstone and indorsed, "Presented and not paid for want of funds. R. E. Jackson, City Treasurer," and that all of said warrants are now due and bear legal interest from the time they were presented to the city treasurer of the city of Tombstone for payment. The indorsements of the non-payment of the warrants for want of funds, which were intended to authorize the drawing of interest from the dates thereof, have not been dated, and might be presumed to have been made on the dates of the several instruments, but the evidence in the case, even as presented by the plaintiff, discloses the fact that the warrants were not drawn until the year 1894, and they could not have been presented for payment until after they were drawn. Consequently such presentation was, according to the evidence presented by the plaintiff, some time in the latter part of 1894. The evidence as also presented by the plaintiff further shows that R. E. Jackson, who signed the warrants as city treasurer, was not the acting city treasurer at that time, and that he had no funds belonging to the city, and had not had such funds for more than three years; and it is stipulated between the parties, as evidence in the case, that during the year

1894 the functions of the office of city treasurer, and the receiving and disbursing of the public moneys belonging to the city, and the other duties relating to said office, were performed by one J. W. Bartholomew. The evidence tends to show that the parties who presented the warrants to Jackson for payment at that time knew that he was not acting as city treasurer and had no funds of the city treasury in his custody, and that Bartholomew was at that time and during that year the qualified and acting city treasurer, having in charge the funds of the city.

It is evident that the presentation of the warrants to Jackson, and their non-payment for want of funds at a time when he had none of the city funds in his possession or under his control, and no access to such funds, or any thereof, without a presentation of them to the qualified and acting city treasurer, who had control of the city funds, from which, if at all, they could and should have been paid, was not such a presentation as would cause the warrants to bear interest thereafter; and this without considering whether or not the party to whom they were presented might have had some claim to the office of treasurer, or to be entitled to the emoluments thereof.

As a further defense the defendant pleads that the cause of action, if any, accrued more than four years prior to the institution of this suit, and invokes the statute of limitations. The determination of the issues heretofore considered, being decisive of the case, will render an examination into this question unnecessary.

The petition for a peremptory writ of *mandamus* is denied, and this proceeding is dismissed.

KENT, C. J., SLOAN, J., and DAVIS, J., concur.